ÁNGEL ROSADO COLLAZO, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE SAN JUAN, SECCIÓN III, recurrido.

*Número:* CE-86-391 *Resuelto:* 24 de marzo de 1987

*William Vivoni, Jr.,* abogado del recurrente; el Registrador recurrido compareció por escrito.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

Ángel Rosado Collazo presentó para inscripción en el Registro de la Propiedad, la Escritura Núm. 9 sobre *testamento abierto* otorgada por su esposa Cruz Rodríguez Colón en Bayamón, el 2 de diciembre de 1979, ante el notario Wil-

liam Vivoni, Jr. Conjuntamente acompañó *instancia* jurada ante el mismo notario —afidávit Núm. 605— y solicitó la inscripción, a favor de la heredera y legataria Antonia Rosado Rodríguez, de un legado de participación en bien inmueble, que como parte de la sociedad de gananciales Rosado-Rodríguez, integraba el caudal relicto de la causante. Incluyó además certificación sobre cancelación del gravamen del Departamento de Hacienda de 31 de mayo de 1983, copia de un certificado de defunción expedido el 2 de junio de 1983 por el Walter Reed Army Medical Center, en Washington, D.C., y una certificación negativa del Director de Inspección de Notarías de 3 de agosto de 1984, en cuanto a la existencia de otra inscripción sobre modificación, ampliación o revocación del aludido testamento.

El 28 de abril de 1986 el Registrador le notificó su calificación y apuntó como faltas que en "el Certificado de Defunción la causante es Cruz Rodríguez Rosado, *persona distinta* a la testadora Cruz Rodríguez Colón [y] . . . [n]o se expresan las circunstancias personales de Alba Rosado Rodríguez". (Énfasis suplido.) En recalificación, el Registrador mantuvo su criterio, denegó la inscripción y anotó preventivamente el documento por 60 días. Inconforme, Rosado Collazo interpuso este recurso gubernativo.

Su solución exige sintetizar los hechos resultantes de los documentos antes aludidos. Primero, el inmueble en cuestión consta inscrito a nombre de Ángel Rosado, casado con Cruz Rodríguez *de Rosado*.[1] Segundo, en la Escritura Núm. 9 sobre testamento abierto, comparece como testadora "DOÑA CRUZ RODRÍGUEZ COLÓN, mayor de edad, propietaria, *casada con Don Angel Rosado Collazo*, y vecina de Bayamón, Puerto Rico". (Énfasis suplido.) Tercero, en el certificado de

---

[1] En su instancia registral, el viudo Ángel Rosado Collazo expone que está inscrito a su nombre y el de su esposa Doña Cruz Rodríguez *Rosado*. Para fines decisorios esta variante es insustancial.

defunción expedido en el Walter Reed Army Medical Center se expresa el nombre de la causante como sigue: "(*First*) Cruz (*Middle*) Rodríguez (*Last*) Rosado" y como cónyuge supérstite, Ángel Rosado con dirección en Bayamón, Puerto Rico. Cuarto, en la cancelación de gravamen del Departamento de Hacienda dirigido al Sr. Ángel Rosado Collazo figura el nombre de la causante, Cruz Rodríguez *Colón*. Y finalmente, la instancia jurada dirigida al Registrador por don Ángel Rosado Collazo consigna que "su esposa Doña Cruz Rodríguez Colón, también conocida como Doña Cruz Rodríguez Rosado en los archivos del ejército de los Estados Unidos y en los libros de inscripción obrantes en ese Registro de la propiedad".

I

Se imponen unas mínimas reflexiones en torno a nuestro sistema de derecho inmobiliario registral. El mismo, "está predicado en la certeza y corrección de sus inscripciones. Los asientos del Registro deben ser lo más completos y claros que sea posible. Ello evita confusión y la comisión de errores". *Acevedo* v. *Registrador*, 115 D.P.R. 461, 462 (1984). En la consecución de esos objetivos, la Ley Hipotecaria faculta al Registrador para calificar todos los documentos presentados ante él para su inscripción. *Mojica Sandoz* v. *Bayamón Federal Savs.*, 117 D.P.R. 110 (1986); *Cabassa* v. *Registrador*, 116 D.P.R. 861 (1986). El ámbito de esa gestión calificadora —para extender o denegar una inscripción— comprende "las formas extrínsecas de los documentos presentados, la capacidad de los otorgantes y la validez de los actos y contratos contenidos en tales documentos". Art. 64 Ley Hipotecaria, 31 L.P.R.A. sec. 2267. En esa misión el " 'Registrador considerará, conforme a lo prescrito en el Art. 64 de la Ley [30 L.P.R.A. sec. 2267] como faltas de legalidad de los documentos cuya registración se solicite, todas las que afecten, tanto a las formas de los documentos como a la eficacia de las obli-

gaciones o derechos contenidos en los mismos, *siempre que resulten del texto de dichos documentos o puedan conocerse por la simple inspección de ellos'* ". (Énfasis en el original.) *Mojica Sandoz* v. *Bayamón Federal Savs.*, supra, págs. 127–128.

En resumen, atendiendo la función estrictamente registral de calificación, el Registrador debe determinar la legalidad de los documentos presentados y así asegurar al máximo paridad entre la realidad registral y la extraregistral. D. Martínez Irizarry, *Los principios hipotecarios bajo la nueva legislación en Puerto Rico*, 50 Rev. Jur. U.P.R. 195, 213 (1981); R. M. Roca Sastre, *Derecho Hipotecario*, 7ma ed., Barcelona, Ed. Bosch, 1979, T. II, págs. 255–256.

Cónsono a la función calificadora del Registrador y en cierto modo paralela, "el notario ejerce una previa calificación de la legalidad y suficiencia de los documentos que ha de presentar al Registro y debe esforzarse por alcanzar la mayor claridad y certeza en los mismos facilitando la labor del Registrador". *Empire Life Ins. Co.* v. *Registrador*, 105 D.P.R. 136, 139 (1976).

## II

En su primera falta, en vista de la diferencia de nombres, el Registrador consignó que "según el Certificado de Defunción, la causante es Cruz Rodríguez Rosado, *persona distinta* a la testadora Cruz Rodríguez Colón". (Énfasis suplido.) Ese dictamen se da en atención al testamento y al certificado de defunción, que son documentos esenciales para la anotación preventiva del legado —Arts. 112 y 121, Ley Hipotecaria, 30 L.P.R.A. secs. 2401 y 2410— y para la inscripción del derecho hereditario. Art. 95, Ley Hipotecaria, 30 L.P.R.A. sec. 2316 y Art. 50.2 del Reglamento. Para fines del Registro, el documento de la sucesión, "es aquel que contiene el testamento o la declaración judicial de herederos abintestato". Art.

95 (30 L.P.R.A. sec. 2316) ; Roca Sastre, *op. cit.*, T. IV, Vol. 1, pág. 81. ([2])

 Ciertamente, para garantizar la certeza de las constancias del Registro, es medular el principio del tracto sucesivo. Art. 57 Ley Hipotecaria, 30 L.P.R.A. sec. 2260; Martínez Irizarry, *op. cit.*, pág. 215 *et seq.* Como corolario, el Registrador viene obligado a exigir correspondencia entre el nombre del transmitente y el titular registral. Art. 99.4 del Reglamento; B. Camy Sánchez-Cañete, *Comentarios a la Legislación Hipotecaria*, 3ra ed., Pamplona, E. Aranzadi, 1983, Vol. V, págs. 350–351. A tal efecto, en lo concerniente a las circunstancias específicas que deben expresar las inscripciones de toda finca, el Art. 87 dispone "el nombre del titular" de quien *proceden* los bienes y a *favor* de quien se va a inscribir. 30 L.P.R.A. sec. 2308. De igual modo, el Art. 99.2 el Reglamento exige que se determinen las personas naturales de quien procedan los bienes o derechos, o a favor de quien se inscriban, "expresando su nombre y demás circunstancias personales, con especificación cuando se trate de personas casadas, de los nombres y apellidos de ambos cónyuges". Finalmente, el Art. 99.4 del Reglamento en lo pertinente dispone:

> Los titulares registrales deberán aparecer de los documentos presentados con el *nombre y todos los apellidos que* consten del Registro.
> En los asientos que se practiquen se designarán los titulares con todos los apellidos que aparezcan en los títulos que se presenten, *sin que sea permitido al Registrador añadir o quitar ninguno.* (Énfasis suplido.)

 En *Acevedo* v. *Registrador*, supra, al evaluar el uso y suficiencia de la inicial y el de un sólo apellido por una mujer casada en una escritura presentada para inscripción dijimos:

---

([2]) Este artículo versa sobre el procedimiento y funcionamiento registral. En lo sustantivo, hemos de remitirnos al Art. 616 del Código Civil, definidor del *título hereditario.* 31 L.P.R.A. sec. 2121.

Los asientos del Registro deben ser lo más completos y claros que sea posible. Ello evita confusión y la comisión de errores. El expresar el nombre completo y los dos apellidos de los otorgantes en una escritura pública no resulta gravoso ni para éstos ni para el notario autorizante. *Acevedo* v. *Registrador,* supra, pág. 462.

Esta ha sido siempre la norma favorecida. Su observancia, en armonía con otros estatutos, ([3]) es clave para lograr el ideal de unos asientos depurados del Registro.

La antigua Ley Hipotecaria de 1893, derogada por el Art. 254 de la Ley Hipotecaria y del Registro de la Propiedad, Núm. 198 de 8 de agosto de 1979, disponía en su Art. 9:

Toda inscripción que se haga en el Registro expresará las circunstancias siguientes: . . . 5. El nombre y apellido de la persona si fuese determinada. . . .

Esta legislación original, de carácter menos específico que la vigente, representaba el estado de derecho al momento de la primera inscripción del bien inmueble objeto del legado y del otorgamiento de la escritura que nos ocupa.

### III

Nuestra Ley Notarial no requiere expresamente que el notario consigne o exprese los nombres de los otorgantes.

---

([3]) En torno al Registro Demográfico, la Ley Núm. 24 de 22 de abril de 1931, exige que en los certificados de defunción conste: "Nombre y apellidos del fallecido . . . ; [n]ombre del padre . . . [y] [n]ombre y apellidos *propios* de la madre." (Énfasis suplido.) 24 L.P.R.A. sec. 1103. En los certificados de nacimiento: "Nombre y apellidos del niño . . . ; [n]ombre y apellidos del padre . . . [y] [n]ombre y apellidos *propios* de la madre." (Énfasis suplido.) 24 L.P.R.A. sec. 1133. Finalmente, en los documentos de matrimonio: "Los nombres, apellidos . . . de los contrayentes [y] los nombres, apellidos y naturaleza de los padres." 24 L.P.R.A. sec. 1165.

Además, la ley impone al Secretario de Salud llevar un archivo e índice en que "ordenará y conservará permanentemente los certificados en forma sistemática: preparará y mantendrá al día un índice alfabético de los mismos por los *apellidos* del fallecido . . ., por los *apellidos* de los contrayentes . . . y por los *apellidos* de los padres, . . . en los de nacimiento." 24 L.P.R.A. sec. 1232.

Sin embargo, ello es un deber implícito dimanante de la Sec. 16 (4 L.P.R.A. sec. 1016) sobre la exigencia de que dicho funcionario dé fe de conocimiento. (⁴) Dicho de otro modo, del mandato de dación de fe de conocimiento, "queda sobreentendido que los ha de mencionar nominalmente". J. M. Sanahuja y Soler, *Tratado de Derecho Notarial*, Barcelona, Ed. Bosch, 1945, T. I, pág. 449. Giménez-Arnau, luego de concluir que la designación del sujeto "es en sí el de mayor importancia y el que pueda ofrecer mayor complejidad", enfatiza el modo de individualizar "las personas de los comparecientes respecto *al nombre y apellidos; la edad; el estado; la profesión y la vecindad y la nacionalidad o regionalidad civil*". E. Giménez Arnau, *Derecho Notarial*, Pamplona, Ed. Univ. de Navarra, 1976, pág. 523.

Por lo demás, es unánime la glosa científica sobre el nombre que deberá expresarse, sea simple o compuesto, "con su apellido o apellidos". P. Ávila Álvarez, *Estudios de Derecho Notarial*, 5ta ed., Madrid, Ed. Montecorvo, 1982, pág. 127. Su importancia es evidente. "El principal de los elementos de identificación, es sin lugar a dudas, el nombre. Es atributo de la personalidad porque ella no se concibe en concreto sin la individualización del sujeto; es institución del derecho, concepción jurídica levantada sobre la base de la realidad, como conceptúa Celestino Piotti. No es ya, como dice luego, la simple palabra o voz de que los hombres se valían para llamarse los unos a los otros; es ahora algo más: *es la denominación jurídica concreta de la persona*." (Cita omitida. Énfasis en el original.) C. E. González, *Teoría General del Instrumento Público*, Buenos Aires, Ed. Ediar, 1953, pág. 313.

---

(⁴) "[N]o puede deducirse de su silencio que considere válidos los instrumentos públicos a los que falte este requisito, sino que por ser tan esencial dicha circunstancia no creyó necesario mencionarla taxativamente." M. Fernández Casado, *Tratado de Notaría*, Madrid, Ed. Vda. M. Minuesa, 1895, T. I, pág. 473.

En su documentada y abarcadora obra, Neri expone las siguientes características:

a) *Nombre* es la palabra con que cada persona suele designarse y distinguirse. Llámase también nombre de pila, o de bautismo, o prenombre, y tiene por objeto individualizar a los distintos miembros de una familia. *Apellido,* o nombre de familia o patronímico, es el nombre de la familia a la cual pertenece una persona; de ahí que por trasmitirse de padre a hijo se llame también nombre hereditario. . . .

. . . . . . . .

e) La palabra *"nombre"* no es en realidad otra cosa que el atributo por el cual somos conocidos, la noción o idea por la cual se nos distingue, una especie de marca pública por medio de la cual se conoce a las distintas familias. Aunque sea del origen más oscuro y dudoso, el nombre en todo individuo es una cualidad distintiva, que hasta puede ser de fama, por la manera muy personal que puede diferenciarnos de los demás. (Citas omitidas.) A. I. Neri, *Tratado teórico y práctico de derecho notarial,* Buenos Aires, Eds. De Palma, 1970, Vol. 3, págs. 354-368.

Y más adelante, el mismo autor, al examinar que el apellido se adquiere por nacimiento, transmisión hereditaria, adopción y matrimonio —sobre este último modo— nos dice: "la mujer casada, mediante la preposición 'de', agrega a su apellido el apellido de su esposo, y lo adita por derecho y como un deber. Por nuestro sistema, *no hay sustitución del nombre; el único cambio consiste en la adjunción del apellido del esposo.* Ello deriva, tanto de la inveterada costumbre como del vínculo de solidaridad moral y material que el matrimonio crea entre los esposos". (Énfasis suplido.) Neri, *op. cit.,* pág. 376.

Sobre este último extremo, debemos recordar que en Puerto Rico hasta que fue enmendado por la Ley Núm. 93 de 9 de julio de 1985, (5) el Art. 94 del Código Civil disponía que

---

(5) En la exposición de motivos la Ley Núm. 93 consignó:

"El Código Civil de Puerto Rico le impone como obligación a la mujer casada, el uso del apellido de su marido. La mujer profesional si contrae

"[l]a mujer usará el apellido de su marido". 31 L.P.R.A. sec. 287. Sin embargo, hemos de aclarar que nunca hemos interpretado que dicho precepto haya tenido el efecto mandatorio de enmendar *ex proprio vigore*, en el Registro Demográfico, el nombre en el certificado de nacimiento de toda mujer casada.

## IV

Teniendo en mente estos preceptos legales y comentarios, concentremos en la disposición del recurso.

Es evidente que al momento de la primera inscripción en el Registro de este bien inmueble, la testadora Cruz Rodríguez Colón, como esposa de Ángel Rosado Collazo, por imperativo del Art. 94 del Código Civil usaba el apellido de su marido. Ello explica por qué, en la técnica observada al inscribirse por primera vez el inmueble, con cierta laxitud, se dio entrada y figura a nombre de "Angel Rosado casado con Cruz Rodríguez *de Rosado*". (Énfasis suplido.) Este último nombre, así expresado, omitía el segundo apellido "Colón". Obsérvese, sin embargo, que la sustitución por el apellido del marido, era compatible con las disposiciones de aquel ordenamiento jurídico.

Al momento de otorgarse el 2 de diciembre de 1979 la escritura de testamento abierto Núm. 9, el notario Vivoni, Jr. en

---

matrimonio a veces prefiere mantener el apellido de soltera, ya que es conocida por éste y le perjudicaría profesional y económicamente cambiarse el apellido por el del marido.

"La realidad actual de los matrimonios entre jóvenes y entre profesionales es que en ellos la mujer casada prefiere y retiene su apellido de soltera. Esta realidad fue expresada en el Informe Especial Núm. 2 Sobre la Mujer y la [N]ueva Legislación de Derecho de Familia de 1977.

"Este sentir de la mujer puertorriqueña fundamenta la razón de la medida[,] ya que es a todas luces contrario a nuestro ordenamiento constitucional el imponer a la mujer la obligación de usar el apellido de su marido, cuando a éste no se le impone una obligación igual.

"*Esta Asamblea Legislativa entiende como política pública* que todo discrimen por *razón de sexo* que *contenga nuestro ordenamiento jurídico, debe eliminarse.*" (Énfasis suplido.)

observancia de la buena práctica notarial, apropiadamente hizo constar el nombre correcto de la compareciente: "DOÑA CRUZ RODRIGUEZ COLON, mayor de edad, propietaria, casada con Don Angel Rosado Collazo."

El certificado de defunción presenta una tercera modalidad. Fue expedido en Estados Unidos. Tomamos conocimiento judicial de que en el sistema norteamericano, distinto al nuestro, es práctica común usar el primer apellido del varón para identificar al cónyuge y el apellido materno como segundo nombre. La primera costumbre explica que en este documento aparezca *Cruz* como el nombre de la fallecida, *Rodríguez* como segundo nombre y *Rosado* como apellido.

Estas ligeras diferencias en los nombres no establecen racionalmente una identidad distinta de personas. Aun así, deben ser subsanadas y esclarecidas. No hacerlo, atentaría contra la certeza y claridad que debe gozar toda inscripción registral. El problema es recurrente. Diariamente se generan situaciones análogas. Tiene sus orígenes en la forma laxa en que algunas veces se desenvuelve la práctica notarial, la ausencia de un reglamento notarial, los efectos de un estatuto derogado, y las costumbres en Estados Unidos y otros países. La situación tiende a afectar el desenvolvimiento rápido y eficiente de las operaciones registrales. Aspiramos a que todo titular registral esté adecuada y correctamente identificado por su nombre y dos apellidos. *Acevedo* v. *Registrador*, supra. El problema exige una solución formulada con pragmatismo judicial. Veamos.

El Art. 99.4 del Reglamento Hipotecario prohíbe al Registrador añadir o quitar alguno de los nombres o apellidos que aparecen en el Registro. Según sus términos, una vez inscrito un título a nombre de una persona, sólo podrá variarse: (1) si diere fe el notario del error y de su personal conocimiento del verdadero nombre, o (2) por resolución judicial.

En su comparecencia, el Registrador argumenta que no se trata de un error sobre la corrección del nombre, sino de una situación que sólo puede subsanarse a través de procedimiento judicial. Sugiere además, que por haber fallecido Cruz Rodríguez Colón, la instancia notarial no está disponible. No podemos convenir con esa interpretación. Primeramente, no estamos ante una alteración en el valor del nombre o apellidos, sino de una situación creada por una anomalía estatutaria e interacción con un documento —certificado de defunción— originado en Estados Unidos. No se trata propiamente de un cambio de nombre, sino de una rectificación con el limitado objetivo de atemperar su uso producido por el solo ministerio de la ley. *Cf. Calderón et al.* v. *El Registrador de Arecibo,* 31 D.P.R. 355 (1923).

▪▪▪ Segundo, ya hemos expresado que el notario debe ejercer una previa calificación y "debe esforzarse por alcanzar la mayor claridad y certeza" en los documentos presentados ante el Registrador. *Empire Life Ins. Co.* v. *Registrador,* supra, pág. 139. Aquí el notario, al redactar la Escritura Núm. 9 de testamento abierto, expresó correctamente el nombre completo de la testadora e hizo constar que estaba casada con el recurrente Ángel Rosado Collazo. No podía exigírsele más. La discrepancia no dimana de ese documento, sino de la constancia registral previa y el certificado de defunción. Se trata de una situación que podía ser subsanada por éste dando fe del mismo y de su personal conocimiento del verdadero nombre. Art. 99.4 del Reglamento.

La instancia presentada por el Sr. Ángel Rosado Collazo satisface estos requisitos. La discrepancia entre la constancia registral, el certificado de defunción y el testamento, ya hemos señalado, es producto accidental de una metodología distinta a la nuestra. La instancia hace referencia a este hecho y bajo juramento consigna que Cruz Rodríguez Colón es también conocida como Cruz Rodríguez Rosado en los archivos de un

hospital del Ejército de Estados Unidos. Como tal, de su faz supera las discrepancias apuntadas por el Registrador. El análisis integral de los elementos extrínsecos de los documentos —testamento, certificado de defunción e instancia— elimina cualquier duda en relación con la identidad de ella como testadora según el certificado de defunción.

Y tercero, debido a la naturaleza del defecto, otra solución impondría retrasos indebidos y costos injustificados en el proceso de corrección de las instancias del registro. Representaría una carga excesiva e irrazonable sobre los interesados y el sistema judicial. En justa perspectiva, no podemos perder de vista que el Legislador, al momento de redactar la nueva Ley Hipotecaria en 1979, no tuvo el beneficio de la derogación posterior en 1985 del citado Art. 94 del Código Civil. Entonces, como ahora, se hubiese hecho evidente la complicación documental que acarreaba y el efecto multiplicador que tendría en las constancias del Registro.

## V

Aunque el Registrador no tiene razón en su primer señalamiento, procede confirmar su calificación. Conforme la segunda falta, el peticionario no expresó en su instancia las circunstancias personales de la legataria Alba Rosado Rodríguez según el Art. 50.2 del Reglamento. Ello es requisito indispensable para inscribir ese derecho hereditario.

Por este solo fundamento, *se confirmará la nota recurrida.*

*Se dictará la correspondiente sentencia.*

El Juez Asociado Señor Rebollo López concurre en el resultado sin opinión escrita. El Juez Presidente Señor Pons Núñez no intervino.