EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Herederos de Margarita Collazo Félix, Doña Aurea Ana Collazo Llauger y otros<br><br>Peticionarios<br><br>v.<br><br>Honorable Richard F. Keeler Vázquez, Registrador de la Propiedad de Primera Instancia, Sección de Caguas<br><br>Recurrido | Certiorari<br><br>2007 TSPR 223<br><br>173 DPR \_\_\_\_ |

Número del Caso: RG-2007-4

Fecha: 13 de diciembre de 2007

Abogado de la Parte Peticionario:

      Lcdo. Miguel E. Sagardía De Jesús

Abogado de la Parte Recurrida:

      Lcdo. Richard F. Keeler Vázquez
      Registradora de la Propiedad

Materia: Recurso Gubernativo

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Herederos de Margarita
Collazo Félix, Doña Aurea
Ana Collazo Llauger y otros

     Peticionarios

       v.                RG-2007-4

Honorable Richard F.
Keeler Vázquez, Registrador
de la Propiedad de Primera
Instancia, Sección de Caguas

     Recurrido

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 13 de diciembre de 2007

La esencia de la controversia que nos ocupa gira en torno al procedimiento para la inscripción en el Registro de la Propiedad del derecho hereditario.

**I**

La señora Margarita Collazo Félix (en adelante "la causante") falleció testada a los 96 años de edad, el día 14 de junio de 2003. Ésta había contraído primera y únicas nupcias con don Rafael Rivera del Valle, quien le premurió. La causante no procreó hijos.

Años antes de su deceso, doña Margarita había otorgado un testamento abierto ante el notario Jorge Puig. En dicho testamento, la señora Collazo Félix

había instituido como sus únicos y universales herederos a sus tres hermanos de nombres: Rodolfo, Mercedes y Luis Gilberto Collazo Félix. Éstos a su vez, fueron nombrados albaceas testamentarios. El testamento indicaba que si alguno de los herederos de doña Margarita le premoría, la aportación designada para dicho heredero pasaría a sus hijos. Respecto a la hermana de la causante, Mercedes, quien no tuvo hijos, el testamento señalaba que de ésta premorir a la causante su participación acrecería a favor de los hijos de su hermano Rodolfo.[1] Los sobrinos de doña Margarita por lo tanto, se instituyeron como herederos sustitutos. Los tres hermanos de la causante le premurieron.

Acaecido el óbito de la señora Collazo Félix, los herederos sustitutos, a saber: Áurea Collazo Llauger, Enid Collazo Gutiérrez, Rodolfo Collazo Gutiérrez, Betzaida Collazo Gutiérrez, Carlos Collazo Gutiérrez, Luis Collazo Sola y María Mercedes Collazo Sola, solicitaron del Registrador de la Propiedad, mediante "Instancia sobre inscripción de bienes hereditarios", la inscripción a su favor de cierta propiedad inmueble perteneciente a la

---

[1] La segunda cláusula del testamento abierto otorgado por la señora Margarita Collazo Félix dispone:

> Segundo: El (sic) Testador (sic) instituye como sus únicos y universales herederos a Rodolfo, Mercedes y Luis Gilberto Collazo Félix, sus tres hermanos; indicando que si alguno le premuere, que la porción designada para dicho heredero sea para los hijos de tal heredero, excepto en el caso de Mercedes, quien no tiene hijos y en caso de que ésta le premuera, la porción designada para ella sea para los hijos de su hermano Rodolfo Collazo Félix.

causante. La referida instancia se presentó en el Registro de la Propiedad, sección I de Caguas el 19 de enero de 2005 y fue anotada en el Asiento 672 del Libro Diario 1109, con entrada número 632.

La instancia presentada se acompañó con copia de los siguientes documentos: copia certificada de la escritura de testamento abierto, certificación del Registro de Testamentos emitida por la directora de la Oficina de Inspección de Notarías, certificado de cancelación de gravamen expedido por el Departamento de Hacienda, certificados de defunción de la causante así como de sus hermanos y certificados de nacimientos de los hijos de los hermanos de la causante, así como los correspondientes derechos de inscripción.

El 12 de marzo de 2007, el Registrador de la Propiedad notificó que la Instancia registral adolecía de varias faltas que impedían su registración. Específicamente, el Registrador informó lo siguiente:

> En la Instancia Registral no comparecen los albaceas o uno de ellos, falta presentar las Cartas Testamentarias para autorizar a los albaceas testamentarios para solicitar y tramitar la inscripción de los herederos. . . . Vease (sic) Sección 2361-2575 del Título 32 (Código de Enjuiciamiento Civil) de Leyes de Puerto Rico anotadas.
>
> En su defecto, si ellos pre-murieron al testador, como es el caso, favor de solicitar la designación de herederos a través del Tribunal. Vease (sic) Sección 2,301-Supra. Artículos 38, 42, 43 y 68 de la Ley Hipotecaria de Puerto Rico.

Los herederos sustitutos, a través de su representación legal, presentaron el 19 de marzo de 2007 una solicitud de recalificación. En la misma, adujeron que las disposiciones

legales invocadas por el Registrador de la Propiedad eran inaplicables. Señalaron además, respecto a la primera falta notificada, que habiendo fallecido los albaceas testamentarios cualquiera de los herederos sustitutos, como persona interesada, podía solicitar la inscripción de los bienes hereditarios. Indicaron, que las disposiciones sobre la administración judicial contempladas en el Código de Enjuiciamiento Civil, e invocadas por el Registrador, no aplicaban en este caso. Arguyeron que lo que se solicitaba del Registrador era la inscripción en el Registro de la Propiedad de los derechos hereditarios lo que no constituía un acto de administración de la herencia, por lo que era improcedente invocar las disposiciones del Código de Enjuiciamiento Civil. Finalmente, adujeron que era impropio exigirles que instaran un procedimiento judicial para procurar una declaratoria de herederos habida cuenta de que la testadora en su testamento, había establecido una sustitución de herederos previendo que los herederos instituidos en el testamento le premurieren.

El 29 de junio de 2007, el Registrador de la Propiedad emitió su calificación final denegando la inscripción de la Instancia registral solicitada, bajo los mismos fundamentos invocados previamente.

El 19 de julio, los herederos sustitutos de doña Margarita Collazo Félix presentaron un recurso gubernativo ante este Tribunal. Posteriormente, el Registrador de la Propiedad presentó su correspondiente contestación al

recurso. En este último escrito, el Registrador abundó en sus fundamentos para denegar la inscripción en el Registro. De entrada, el Registrador señaló que está facultado para solicitar documentos complementarios cuando del propio documento pendiente de inscripción surge "causa para creer que pueda ser inválido ... [y e]n el caso de autos, los documentos presentados no reflejaban su entera validez para convertirse en una inscripción registral."

El Registrador adujo que la "designación de herederos en el caso de autos no e[ra] precisa", pues aun cuando en el testamento se indicaba que de premorir los hermanos de la testadora --quiénes como vimos eran sus herederos universales-- les sustituirían los hijos de éstos, no se indicó "quiénes son los hijos de sus hermanos, los nombres de quien viene a heredar." Para esta proposición se invocó el Art. 701, del Código Civil, 31 L.P.R.A. sec. 2290, donde se dispone cómo se designa al heredero. En vista de lo anterior, el Registrador concluyó que se debía acudir a una "acción judicial para que el Tribunal de Primera Instancia correspondiente, determine los nombres y apellidos correspondientes a los herederos que sustituyen a los premuertos nombrados en el Testamento Abierto y Revocación del testamento, objetos del caso de epígrafe, ya que nos se cumple la finalidad de la Ley, con una Instancia juramentada por una de los mismos herederos que sustituye."

Trabada así la controversia, procede que pasemos a resolverla.

**II**

La discusión ante nuestra consideración gira en torno a la inscripción en el Registro de la Propiedad del derecho hereditario y cómo se procede con la misma. En rigor, debemos comenzar con una breve exposición sobre la naturaleza y objeto del derecho hereditario, previo a determinar cómo logra acceso al Registro de la Propiedad. Nos corresponde también expresarnos en torno a la figura de la sustitución hereditaria, pues como veremos, los peticionarios advienen herederos de la causante en virtud de una cláusula testamentaria de esta naturaleza.

Veamos entonces.

Suceder, en su sentido jurídico, significa que una persona se coloca en la posición de otra, asumiendo todos sus bienes, derechos y obligaciones, con excepción de aquellos que sean personalísimos, y consecuentemente, no susceptible de ser transferidos. En la sucesión *mortis causa* entonces, se suscita el desplazamiento en las relaciones jurídicas detentadas por el causante sobre sus bienes, derechos y obligaciones transferibles. Véase, *Kogan v. Registrador*, 125 D.P.R. 636 (1990). Véase además, E. González Tejera, *Derecho Sucesorio Puertorriqueño*, Ed. UPR, San Juan, 2002, vol. II.

La herencia, desde el punto de vista objetivo, es el conjunto de los bienes y relaciones patrimoniales objeto de la sucesión. El heredero a su vez, es la persona designada por el testador en su testamento para sucederle a título

universal en la totalidad o en una parte alícuota, en esos bienes y relaciones patrimoniales transmisibles.  González Tejera, *op. cit.,* pág. 343.

Cuando existe una pluralidad de herederos que han aceptado la herencia, se forma entre ellos una comunidad que no termina hasta que se proceda con la partición y adjudicación del patrimonio del causante común.  Hasta tanto no se lleven a cabo las operaciones particionales, "ningún heredero tiene título específico alguno sobre ninguna parte de la herencia en forma tal que pueda disponer de la misma libremente."  L. Mojica Sandoz, *Derecho Hipotecario de Puerto Rico*, Publicaciones JTS, San Juan, 2004, pág. pág. 129.  Véase además, *Burgos v. Hernández*, 54 D.P.R. 37 (1938).

La participación en esta comunidad le confiere a cada uno de los coherederos el llamado derecho hereditario en abstracto.  J. Cuevas Segarra, A. Ramón García, *Derecho Sucesorio Comparado*, Publicaciones JTS, San Juan, 2003, pág. 133.  Por derecho hereditario entonces ha de entenderse, la situación en que se encuentra el patrimonio relicto del causante, considerado éste como una unidad, que "pertenece indivisa y sintéticamente a una pluralidad de herederos que han aceptado la herencia."  L. Roca-Sastre Muncunill, *Derecho de Sucesiones*, Ed. Bosch, Barcelona, vol. IV, 2000, pág. 7. En igual sentido, L. Rivera Rivera, *Derecho Registral Inmobiliario Puertorriqueño*, Editores Jurídicas, San Juan, 2nda ed., 2002, pág. 427.  Es decir, el denominado derecho hereditario tiene lugar cuando los herederos son varios y

están en comunidad y se extiende hasta que se realice la partición. Se trata por lo tanto, "de una comunidad incidental o transitoria." Roca-Sastre Muncunill, op. cit., pág. 25.

Naturalmente entonces, lo que ingresa al patrimonio de cada heredero es el derecho abstracto y no cada bien, derecho u obligación individualizada. *Kogan v. Registrador, supra*. Véase además, *Narváez Cruz v. Registrador*, 156 D.P.R. 1 (2002). Así, mientras la herencia se mantiene en estado de indivisión, "los interesados tienen una cuota en abstracto, un derecho en el conjunto hereditario." Rivera Rivera, *op. cit*., pág. 427.

Justamente, debido a esta especial índole del derecho hereditario, su acceso al Registro de la Propiedad ha generado amplia controversia en la doctrina. *Véase*, M. Albaladejo, S. Díaz Alabart, *Comentarios al Código Civil y Compilaciones Forales,* Ed. Revista de Derecho Privado, Madrid, 2000, tomo VII, vol. 5, págs. 299-329; Roca-Sastre Muncunill, *op. cit*., págs. 10-19.

Habiendo aclarado ya cuáles son los contornos de la figura del derecho hereditario, corresponde que evaluemos cómo logra acceso al Registro de la Propiedad.

**III**

**A**

Como sabemos, las inscripciones registrales publican **el dominio concreto sobre fincas o derechos reales sobre las mismas**, constatado por el hecho de que el Registro de la

Propiedad se lleva por fincas y no por patrimonios ni personas. L. Rodríguez Otero, *Elementos de Derecho Hipotecario*, Ed. Dijusa, Madrid, 2005, vol. I, pág. 272; J.M. Chico y Ortiz, *Estudios sobre Derecho Hipotecario*, Ed. Marcial Pons, Madrid, 1994, vol. II, capt. XLVIII. Por el contrario, y como ya expresamos, el derecho hereditario recae **en abstracto sobre la masa hereditaria** sin particular adjudicación a los herederos de bienes singulares o concretos, o de cuotas o partes indivisas de los mismos. Ni la masa relicta ni la cuota de los herederos pueden ser englobadas en el concepto de finca. Como sabemos, la masa hereditaria está compuesta de fincas, derechos reales, muebles, créditos, valores, títulos etc., lo que imposibilita "arrastrar al régimen de una de sus partes la transferencia de la totalidad." M. Albaladejo, S. Díaz Alabart, *op. cit.,* pág. 300. No será claro está, sino con la posterior partición y adjudicación que el derecho hereditario se concreta sobre bienes determinados.

Estas peculiaridades del derecho hereditario ponen de relieve las dificultades registrales que su inscripción en el Registro de la Propiedad supone. Los principios fundamentales del Derecho inmobiliario registral, por ejemplo: la fe pública registral, el principio de especialidad o de publicidad, no se adaptan a la naturaleza y objeto del derecho hereditario. Véase, Chico y Ortiz, *op. cit.,* pág. 1159; J. González Martínez, *Principios Hipotecarios,* Madrid, pág. 183, citado en M. Albaladejo, S.

Díaz Alabart, *op. cit.*, págs. 303-304. Con lo cual, los efectos de la inscripción del derecho hipotecario "quedan limitados a garantizar que la finca o derecho en cuyo folio se extiende forma parte de patrimonio adquirido por ciertas personas al fallecer el titular." J. González Martínez, *op. cit.*, pág. 183, citado en M. Albaladejo, S. Díaz Alabart, *op. cit.,* pág. 303-304.

No empece estas dificultades doctrinales, tanto en España como en Puerto Rico se reconoció desde el comienzo del sistema registral la necesidad de dar acceso al derecho hereditario mediante asiento de inscripción. L. Mojica Sandoz, *op. cit.*, pág. 55. Véase además, M. Albaladejo, S. Díaz Alabart, *op. cit.* En 1944, con la reforma hipotecaria española, se modificó la constancia registral del derecho hereditario español proveyendo para que éste únicamente accediera al Registro de la Propiedad por anotación preventiva. Roca Sastre indica que la razón primordial para el cambio fue una de naturaleza práctica, a saber: "acabar con el *equívoco* de que se entendiera que la inscripción del derecho hereditario implicaba la inscripción de una comunidad por cuotas sobre cada finca o derecho inscrito integrante de la correspondiente sucesión y procurar que, mediante la anotación preventiva, o sea, por la circunstancia misma de figurar tan sólo anotado el derecho hereditarios, resalte, en adelante, una saludable advertencia para los terceros, que les haga pensar que no se trata del registro de un derecho normal, sino de algo especial." (Bastardilla en original.)

R.   Roca   Sastre,   L.   Roca-Sastre   Muncunill,   *Derecho*
*Hipotecario*,  Ed.  Bosch,  Barcelona,  8va.  ed.,  1997,  vol.  VI,
pág.  480.

En  Puerto  Rico,  sin  embargo,  el  derecho  hereditario
accesa  al  Registro  mediante  asiento  de  inscripción.   Ello  no
detracta,  no  obstante,  de  la  naturaleza  y  objeto  singular  de
esta  figura  y  de  las  dificultades  registrales  que  su  acceso
al  Registro  conlleva.   Su  inscripción  mediante  un  asiento
registral  obedece  a  la  necesidad  de  mantener  constante  el
paralelismo  entre  los  libros  del  Registro  de  la  Propiedad  y
la  realidad  jurídica.   Así,  como  dice  Cossío  y  Corral,  "todas
las  modificaciones  que,  en  cuanto  a  titularidad  de  las  fincas
supone  la  sucesión  'mortis  causa'  y  todos  los  derechos  y
responsabilidades  que  frente  a  los  bienes  hereditarios  pueden
corresponder  a  las  personas  interesadas  en  la  sucesión"
encuentran,  reflejo  "en  las  hojas  registrales."   A.  Cossío  y
Corral,  *Instituciones  de  Derecho  Hipotecario*,  Ed.  Bosch,
Barcelona,  1956,  2da  ed.,  pág.  289.

En  nuestra  jurisdicción,  la  inscripción  del  derecho
hereditario  tiene  su  propia  sustantividad  habida  cuenta  que
el  Art.  58  de  la  Ley  Hipotecaria  de  Puerto  Rico,  30  L.P.R.A.
sec.  2261,[2]  claramente  dispone  que  no  se  podrá  inscribir  el

---

[2]  El  Art.  58  de  la  Ley  Hipotecaria  de  Puerto  Rico,  30
L.P.R.A.  sec.  2161,  lee  de  la  siguiente  manera:

Los  herederos  y  legatarios  no  podrán  inscribir
a  su  favor  bienes  inmuebles  o  derechos  reales  sin
que  hubiesen  inscrito  previamente  o  soliciten  a  la
vez  la  inscripción  del  título  de  sus  causantes.

derecho transferido por un heredero sin que aparezca ya inscrito el derecho hereditario a su favor. *Véase*, Mojica Sandoz, *op. cit.*, pág. 57. Podemos concluir entonces, que la inscripción del derecho hereditario en nuestro ordenamiento facilita y allana el camino para la entrada al Registro de la Propiedad de la partición hereditaria.

**B**

El Art. 95 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2361, contiene las reglas para la inscripción del derecho hereditario. *Véase además*, sec. 50.1 del Reglamento General para la Ejecución de la Ley Hipotecaria. El Art. 95 dispone, citamos en lo pertinente:

> El documento de la sucesión hereditaria, a los efectos del Registro, es aquel que contiene el testamento **o** la declaración de herederos abintestados….
>
> **Se inscribirá el derecho hereditario a favor de todos los que resultaren herederos, cuando se tratase de bienes adquiridos por herencia y no se haya hecho todavía la correspondiente partición, si lo solicita alguno de los interesados**; expresándose en el asiento la parte que a cada uno de ellos corresponda y el derecho a la cuota usufructuaria del cónyuge supérstite, si la hubieres….
>
> En los casos a que se refieren los dos párrafos anteriores, si en los documentos presentados no aparecieren descritos los bienes, se acompañará un escrito firmado **por cualquier parte interesada** en el que se describan los bienes y se indiquen los números que las fincas tengan en el Registro, con expresión del tomo y folio en que estuvieren inscritas a favor del causante.

---

No se inscribirá el documento de partición de bienes hereditarios o de transferencia o gravamen del derecho hereditario si antes no apareciere previamente inscrito el derecho hereditario a nombre de los herederos.

Para inscribir adjudicaciones concretas, deberán determinarse en escritura pública o por resolución judicial firme, los bienes o partes indivisas de los mismos que correspondan o se adjudiquen a cada titular o heredero, o también escritura pública a la cual hayan prestado su consentimientos todos los interesados, si se adjudicare solamente una parte del caudal y aquéllos tuvieren la libre disposición del mismo.

No se inscribirán enajenaciones o gravámenes de cuotas específicas en una finca que no se haya adjudicado antes en la correspondiente partición. (Énfasis nuestro.)

En *Rosado Collazo v. Registrador*, 118 D.P.R. 577, 583 (1987), indicamos que tanto el testamento como el certificado de defunción, son documentos esenciales para la inscripción del derecho hereditario. El profesor Rivera Rivera, *op. cit.*, pág. 429, nos señala lo siguiente sobre este particular: "el título inscribible es el testamento, que deberá estar acompañado del certificado de defunción del testador para que se pueda hacer constar su fecha de fallecimiento. En este último caso hay que acompañar una certificación del Registro de Testamentos acreditativa de que el testamento no ha sido revocado o modificado. Siempre será necesario acompañar la certificación sobre cancelación de gravamen de contribución sobre la herencia del Departamento de Hacienda."

Conforme se desprende del Art. 95 antes transcrito, la inscripción del derecho hereditario podrá solicitarla directamente al Registrador los herederos, cualquiera de ellos, u otra parte interesada. Para ello, sólo se necesita que la parte que solicita la inscripción acredite su interés en la herencia o acredite su calidad de heredero. En los

casos de sucesión testada, el testamento es el documento que atestigua el carácter de heredero. Rivera Rivera, *op. cit.*

Adviértase, que para efectuar este trámite de carácter transitorio, no se requiere, necesariamente, la comparecencia del albacea o que se esté inmerso en el procedimiento judicial de administración de la herencia que regula el Código de Enjuiciamiento Civil. La Ley Hipotecaria específicamente autoriza a los herederos colectiva o individualmente, a solicitar del Registrador de la Propiedad la inscripción del derecho hereditario.

Pasemos ahora a discutir la figura de la sustitución hereditaria, pues los peticionarios en este caso adquirieron la condición de herederos por virtud de esta figura conforme se desprende de la cláusula de designación de herederos.

## IV

El heredero, como se indicó, es el sucesor a quien se le atribuye la totalidad de las relaciones patrimoniales del difunto o una parte alícuota de los mismos. *Fernández Marrero v. Fernández González*, 152 D.P.R. 22 (2000). La sustitución hereditaria, es aquella disposición de última voluntad mediante la cual alguien es llamado a heredar en defecto de una primera persona llamada, o después de ella. Art. 703 del Código Civil, 31 L.P.R.A. sec. 2301.[3] *Véase además*, González Tejera, *op. cit.*; J. Fuentes Martínez, La

---

[3] El Art. 703 del Código Civil, 31 L.P.R.A. sec. 2301, dispone lo siguiente: "Puede el testador substituir una o más personas al heredero o herederos instituidos para el caso en que mueran antes que él, o no quieran, o no puedan aceptar la herencia."

sucesión y la institución hereditaria, en J. Delgado de Miguel (coordinador) *Instituciones de Derecho Privado*, Thomson Civitas, Madrid, 2004, vol. I, pág. 253; M. Medina de Lemus, *Derecho Civil*, Edtiorial Dilex, S.L., Madrid, cap. 8.

Existen varios tipos de sustituciones hereditarias. En Puerto Rico reconocemos principalmente tres, a saber: la vulgar u ordinaria, la fideicomisaria y la pupilar.[4] González Tejera, *op. cit.*, pág. 609. La primera, la sustitución vulgar u ordinaria, es la que hoy nos ocupa.

Por sustitución vulgar se entiende aquella por la que dos o más personas son llamadas a la herencia o al legado, no para que sean herederos o legatarios conjuntamente, sino para que unos lo sean y otros los suplan si llegan a faltar los primeros. *Véase*, J. Cuevas Segarra, A. Román García, *op. cit.*, sec. 6.1[1]. El profesor Fuentes Martínez, *op. cit.*, pág. 253, la describe de la siguiente manera: "es una sustitución subsidiaria o defectiva, pues el causante quiere que sólo sea eficaz uno de los nombramientos y para ello, además del llamado con carácter preferente, hace uno o varios llamamientos eventuales."[5] Es, a fin de cuentas, una

---

[4] Se postula no obstante, que sólo en las primeras dos instancias existe verdadera sustitución de un heredero por otro llamado subsidiariamente. Ello así, pues en la pupilar no es el heredero el que se sustituye sino el causante por no poder testar válidamente y viene a hacerlo por él un ascendiente. Véase, M. Medina de Lemus, *Derecho Civil*, Editorial Dilex, S.L., Madrid, pág. 177.

[5] En igual tenor, el profesor Roca-Sastre Muncunill, *Derecho de Sucesiones*, Ed. Bosch, Madrid, 1995, vol. I, pág. 457, define esta institución: "La sustitución vulgar es la disposición testamentaria en virtud de la cual el testador nombra *un segundo o ulterior heredero* para el caso o en previsión de que el *anterior heredero* instituido *no llegue*

institución de heredero sujeta a condición. "[L]a condición consiste en que no se reproduzca un evento futuro e incierto es decir, que el instituido no llegue a adir la herencia." González Tejera, *op. cit.*, pág. 614.[6] Igual criterio expresa Albaladejo, cuando indica: "Siendo la sustitución una institución condicional, sus efectos, si la condición se cumple, son los de la institución de heredero." M. Albaladejo, *Sustituciones Hereditarias*, Editorial Gráficas Summa, Oviedo, 1956, pág. 81. Frustrado el primer llamamiento, el sustituto recibe el llamamiento para que disfrute de los bienes, recibiéndolos directamente del testador, no del instituido. En otras palabras, "el sustituto nunca es llamado —nunca recibe delación— como sustituto, sino como *instituido*." (Bastardillas en original.) M. Albaladejo, *op. cit.*, pág. 49.

En tal tenor, en *Huelva v. Clivilles*, 24 D.P.R. 373, 378 (1916), indicamos que la sustitución vulgar opera cuando "el heredero instituido no llegue a serlo, bien por su fallecimiento antes que el testador, bien porque no quiera aceptar la herencia, bien porque no pueda aceptarla." *Véase además*, *Fernández Franco v. Castro Cardoso,* 119 D.P.R. 154 (1987); *Calimano v. Calimano*, 103 D.P.R. 123 (1974);

---

*efectivamente a serlo* (*si heres non erit*) por *no poder* o *no querer.* (Bastardillas en original.)

[6] No obstante, Roca Sastre, *Anotaciones a Enneccerus-Kipp*, 1951, vol. 1, pág. 208, rechaza el criterio de que la sustitución vulgar implique una institución sujeta a la condición suspensiva *si heres no erit*, concluyendo que tal sustitución **es una previsión sucesoria del testador** semejante a la que la ley adopta en los llamamientos sucesivos del ordenamiento legal intestado.

*Junghanns Rivera v. Cornell University*, 71 D.P.R. 673 (1950). El Código Civil no exige, como ocurre con la sustitución fideicomisaria, "que la sustitución vulgar deba ser siempre expresa; sin embargo, deberá deducirse inequívocamente del contenido de la cláusula testamentarias." J. Cuevas Segarra, A. Román García, *op. cit.*, págs. 225-226.

Su finalidad no es otra que evitar la apertura de la sucesión intestada. Martínez Fuentes, *op. cit.* Véase además, M. Medina de Lemus, *op. cit.* El profesor Roca-Sastre Muncunill, *op. cit.,* vol. I, pág. 458, nos advierte que esta figura, propia del Derecho romano, persigue como finalidad primordial evitar la sucesión intestada "por razón del principio romano del *favor testamenti*, siguiendo un dispositivo de *previsión*, atendida la enemiga que había respecto a la ciega y automática sucesión legal." (Bastardillas en original.)

Debemos entonces proceder a aplicar la normativa antes reseñada al asunto ante nuestra consideración.

## V

No hay duda que en su testamento, la causante instituyó a sus hermanos como sus herederos y en caso de premoriencia, a los hijos de éstos como herederos sustitutos. Es decir, la testadora estableció en su testamento un llamamiento subsidiario que por su naturaleza, se ubica claramente en la figura que conocemos como la sustitución ordinaria o vulgar. La causante también instituyó a sus hermanos como albaceas testamentarios.

Habiendo premuerto a la causante sus tres hermanos, los hijos de estos últimos, por disposición expresa de la sustitución ordinaria establecida en el testamento, pasaron a ser los herederos universales de la causante; recibiendo dicho llamamiento directamente de la testadora. Por otro lado, con el óbito de los hermanos de la causante, la disposición testamentaria sobre albaceazgo se tornó inoficiosa. 31 L.P.R.A. sec. 2517.

Los sobrinos de doña Margarita al ser sus herederos, podían solicitar, conforme el Art. 95 de la Ley Hipotecaria y el Art. 50.1 del Reglamento Hipotecario, que se inscribiera en el Registro de la Propiedad el derecho hereditario que sobre los bienes de la causante ostentaban. Solicitud que podían hacer individual o colectivamente, y directamente al Registrador de la Propiedad. No era necesario para ello procurar la administración de la herencia, como parece intimar el Registrador de la Propiedad al hacer especial referencia en su denegatoria de inscripción a las disposiciones sobre administración judicial de los bienes del finado estatuidas en el Código de Enjuiciamiento Civil.

De otra parte, el Registrador de la Propiedad entiende que la designación de heredero "no es precisa, pues indica que en caso de que sus hermanos premueran se designa a los hijos de tal heredero (hermano), excepto una hermana que no tiene hijos y en tal caso que ella (hermana) premuera, designa a los hijos de su hermano, Rodolfo; **sin que se indiquen quiénes son los hijos de sus hermanos….**" (Enfásis

nuestro.)  Esta conclusión se basa, a juicio del Registrador, en el mandato contenido en el Art. 701 del Código Civil, 31 L.P.R.A. sec. 2290.[7]  Este articulado dispone en su primer párrafo que el testador designará al heredero "por su nombre y apellidos".  En su consecuencia y ante la presunta falta de precisión en la designación de herederos, se concluyó que se requería una designación judicial de herederos para proceder con la inscripción del derecho hereditario.  No tiene razón el Registrador.

El Art. 701 del Código Civil describe la forma en que se designa al heredero; y es correcto que en la primera parte del artículo se indica que el heredero debe ser designado por su nombre y apellidos.  Esta es la forma natural de designar a una persona.  No es sin embargo la única forma.  El propio artículo dispone, en su segundo párrafo, que aun cuando "el testador haya omitido el nombre del heredero, si lo designare de modo que no pueda dudarse quién sea el instituido, valdrá la institución."  Con lo cual, podemos concluir que el artículo no exige formalidad especial, bastará que la designación se refiera a persona determinada o determinable. Lo importante, evidentemente, es que el favorecido sea

---

[7] El Art. 701 del Código Civil, 31 L.P.R.A. sec. 2290, reza de la siguiente manera:

> El testador designará al heredero por su nombre y apellido; cuando haya dos que los tengan iguales, deberá señalar alguna circunstancia por la que se conozca al instituido.

> Aunque el testador haya omitido el nombre del heredero, si lo designare de modo que no pueda dudarse quién sea el instituido, valdrá la institución.

inequívocamente determinable, que se conozca con seguridad la voluntad a respecto del causante:  que no pueda dudarse quién es el instituido.  La individualización con nombre y apellidos "no es esencial pues cabe la designación por circunstancias, como seudónimos, apodos, relación de parentesco o familiar, doméstica, profesional, asociativa etc." Roca-Sastre Muncunill, *op. cit.*, tomo I, pág. 338.

En este caso la causante identificó a los herederos sustitutos por su relación de parentesco al decir que eran los hijos de sus hermanos.  Esta forma de designación es suficiente y no adolece de imprecisión como nos indicó el Registrador.  Con esta descripción no cabe duda de a quién la causante interesó designar herederos sustitutos.  Corresponde entonces hacer valer esa última voluntad.  Recordemos como ya habíamos señalado, que el Código Civil no exige una forma particular para la designación de un heredero.  No es necesario entonces acudir al proceso judicial de declaratoria de herederos.

Sobre este asunto, J. Morell y Terry en *Comentarios a la Legislación Hipotecaria*, Ed. Reus, S.A., Madrid, 2da. ed., 1927, vol. XX, t.2, pág. 537, indica precisamente lo siguiente: "Es relativamente frecuente el caso de instituir el testador por sus herederos a los hijos que tiene y a los demás que pudiera tener, o a los hijos de un determinado hermano, sin designar sus nombres.  Es evidente que en tales casos existe institución de herederos, y que, por consiguiente, no necesitan para obtener el carácter de tales

la declaración judicial, puesto que, conforme a lo dispuesto en el párrafo segundo del artículo 772 del Código [Art. 701 del Código Civil de Puerto Rico] la institución es válida aunque el testador omita el nombre del heredero, si lo designa de modo que no pueda dudarse quién sea el instituido."

En estos casos, para acreditar la calidad de hijos no habiendo sido designado éstos por nombre, "basta presentar las partidas correspondientes de nacimiento, . . . [según] las actas del Registro". Morell y Terry, *supra*. Como sabemos, el certificado de nacimiento refleja "los datos vitales de la persona al momento de su nacimiento." *Ex parte Delgado Hernández*, res. 30 de junio de 2005, 164 D.P.R. ___, 2005 TSPR 95. Dejando constancia de la siguiente información: fecha y lugar de nacimiento, nombre de los padres, nombre y sexo de la persona inscrita. En innumerables ocasiones hemos indicando que "la información que consta en el Registro Demográfico constituye evidencia *prima facie* del hecho que se pretende constatar." *Ex parte Delgado Hernández*, *supra,* y casos allí citados.

Adviértase que el Registro Civil --precursor del Registro Demográfico-- es una institución "a cuyo cargo se halla la publicidad de los hechos afectantes al estado civil de las personas o mediatamente relacionados con dicho estado, contribuyendo, en ciertos casos, a la constitución de tales actos y proporcionando títulos de legitimación de estado." Ll. Puig Ferriol, *Manual de Derecho Civil*, Madrid, Vol. 1,

1997, pág. 136.  Su propósito fundamental es "garantizar una información fiable sobre la condición civil y hechos vitales de las personas y proporcionar un medio de prueba de los mismos." *Ex parte Delgado Hernández, supra.*  Por lo tanto, el certificado de nacimiento de los hijos de los hermanos de la causante era prueba suficiente de ese hecho vital.

Lo cierto es que el Registrador no puede exigir "que se justifique que no existen otros herederos más que los que se presentan como tales . . . ."  Morell y Terry, *supra.*  Ni el Código Civil, ni la Ley Hipotecaria u otra legislación especial, exigen que las personas instituidas como herederos en un testamento deban acreditar, para poder adquirir los derechos correspondientes, que no existan otros que tengan esta cualidad.  Véase: Resoluciones de la Dirección General de Registros y Notariado de, 2 de diciembre de 1897, 11 de mayo de 1900, 26 de junio de 1901, 3 de marzo de 1912, según reseñadas en A. Coello Gallardo, *Sucesiones*, Ed. Reus, Madrid, 1952, Tomo I, págs. 563-571.

En el caso que nos ocupa, se anejaron a la instancia presentada al Registro de la Propiedad los siguientes documentos:  copia certificada de la escritura de testamento abierto, certificación del Registro de Testamentos emitida por la directora de la Oficina de Inspección de Notarías, certificado de cancelación de gravamen expedido por el Departamento de Hacienda, certificados de defunción de la causante así como de sus hermanos y certificados de nacimientos de los hijos de los hermanos de la causante, así

como los correspondientes derechos de inscripción. Resolvemos que estos documentos eran suficientes para proceder con la inscripción del derecho hereditario de los herederos de doña Margarita Collazo Félix.[8]

Recapitulando, los hermanos de la testadora le premurieron y copia de sus respectivos certificados de defunción se anejaron a la instancia registral. Con lo cual, los hijos de éstos pasaron a ser los llamados a la herencia. El certificado de nacimiento de éstos, anejados a la instancia presentada, es a su vez suficiente para determinar su calidad de hijos de los hermanos de la testadora y en virtud de la disposición de sustitución hereditaria, herederos de doña Margarita. Ello es suficiente para proceder con la inscripción del derecho hereditario en este caso.

Por los fundamentos previamente reseñados procede revocar la calificación de denegatoria final notificada por el Registrador de la Propiedad. Se devuelve el recurso al Registro de la Propiedad, Sección Primera de Caguas para que se proceda conforme con lo aquí resuelto.


                                        Anabelle Rodríguez Rodríguez
                                             Juez Asociada

---

[8] Esto supone, claro está, que el testamento en cuestión no adolece de ningún defecto que lo invalide.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Herederos de Margarita
Collazo Félix, Doña Aurea
Ana Collazo Llauger y otros

    Peticionarios

       v.                     RG-2007-4

Honorable Richard F.
Keeler Vázquez, Registrador
de la Propiedad de Primera
Instancia, Sección de Caguas

    Recurrido

SENTENCIA

San Juan, Puerto Rico, a 13 de diciembre de 2007

Por los fundamentos expuestos en la Opinión que antecede, los cuales se incorporan íntegramente a la presente, se revoca la calificación de denegatoria final notificada por el Registrador de la Propiedad y se devuelve el recurso al Registro de la Propiedad, Sección Primera de Caguas para que se proceda conforme con lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez no intervino.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo